IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

*By mgarcia at 10:09 am, Mar 06, 2020*

DAKOTA DOUGLAS,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of the Social Security Administration,

    Defendant.

CIVIL ACTION NO.: 5:18-cv-62

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Constance D. Carter ("the ALJ" or "ALJ Carter") denying his claim for Disability Insurance Benefits. Plaintiff urges the Court to reverse and remand the ALJ's decision. Doc. 17 at 22. Defendant argues the Commissioner's decision should be affirmed. Doc. 18 at 1. For the reasons set forth below, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

### BACKGROUND

Plaintiff applied for Supplemental Security Income on February 26, 2015, alleging he became disabled on April 1, 2014 due primarily to longstanding mental health issues.[1] Doc. 13-2 at 11 (R. 10); Doc. 17 at 2. The claim was initially denied on November 24, 2015 and upon reconsideration on January 21, 2016. Doc. 13-2 at 11 (R. 10). On February 3, 2016, Plaintiff filed a request for a hearing. Id. On July 17, 2017, ALJ Carter conducted a video hearing at

---

[1] Plaintiff and his attorney later amended the alleged onset date to February 26, 2105. Doc. 13-2 at 11 (R. 10).

which Plaintiff, who was represented by counsel, appeared and testified from Waycross, Georgia.  Id.  James Waddington, a vocational expert, also appeared at the hearing.  Id.  Prior to the hearing, on July 13, 2017, Plaintiff amended the date for the onset of his disability from April 1, 2014 to February 26, 2015.  Id.; Doc. 13-5 at 15 (R. 209).  ALJ Carter found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") since February 26, 2015.  Doc. 13-2 at 12 (R. 11).  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  Id. at 2 (R. 1).

Plaintiff, born on October 10, 1987, was 30 years old when ALJ Carter issued her final decision.  Id. at 21 (R. 20).  Plaintiff has at least a high school education and is able to communicate in English.  Id.  Plaintiff's past relevant work experience includes work as a corrections officer, sandwich maker, and stock clerk.  Id.

## DISCUSSION

### I. The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).   Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.   20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140.   If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.   Id.   If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.   Id. at 140–41.   If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.   The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.   20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).   If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.   Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work.   Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).   A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."   Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).   If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines

whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience.  <u>Phillips</u>, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  <u>Yuckert</u>, 482 U.S. at 142.

In the instant case, ALJ Carter followed this sequential analysis to determine Plaintiff did not engage in substantial gainful activity since February 26, 2015, his application date.  Doc. 13-2 at 13 (R. 12).  At step two, ALJ Carter determined Plaintiff had degenerative disc disease and a mood disorder, conditions considered "severe" under the Regulations because they "significantly limit" a person's "ability to perform basic work-related activities."[2]  <u>Id.</u> at 14 (R. 13).  However, at the third step, ALJ Carter determined Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.  <u>Id.</u>  The ALJ found:

> [Plaintiff had] the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the [Plaintiff] can occasionally climb stairs, balance, kneel, and stoop, but can never climb ladders or crawl.  He must avoid concentrated exposure to irritants such as fumes, doors or gases and must avoid concentrated exposure to unprotected heights and hazardous machinery.  The [Plaintiff] is limited to work involving three to four step tasks with occasional decision-making and occasional changes in the workplace.  He can have no interaction with the public and can work around coworkers with occasional interaction.

<u>Id.</u> at 16 (R. 15).  At the next step, the ALJ determined Plaintiff could not perform any of his past relevant work.  <u>Id.</u> at 21 (R. 20).  The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of mail clerk, night guard, and cashier/parking lot attendant, all of which exist in significant numbers in the national economy.  <u>Id.</u> at 22 (R. 21).

---

[2]   ALJ Carter discussed Plaintiff's obesity but determined it was "non-severe" within the meaning of the Regulations, and the evidence did not reveal this condition caused any work-related limitations.  Doc. 13-2 at 14 (R. 13).  ALJ Carter also noted Plaintiff's vision loss, pain, fatigue, shortness of breath, weakness, and nervousness.  <u>Id.</u>  ALJ Carter determined these conditions were not "medically determinable" under the Regulations, i.e., the conditions were not evidenced by "medically acceptable clinical and laboratory diagnostic techniques."  <u>Id.</u>

## II.     Issues Presented

Plaintiff argues the ALJ erred in finding that he did not meet or medically equal Listing 12.04.  Doc. 17 at 6–7, 22.  Plaintiff also argues the ALJ erred in finding he could work on a regular and sustained basis, because the finding is not supported by substantial evidence and the ALJ did not properly consider testimony from Plaintiff's grandmother.  Id.

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

### IV. Whether Substantial Evidence Supports ALJ Carter's Finding that Plaintiff did not have an Impairment, or Combination of Impairments, that met or Medically Equaled Listing 12.04

Plaintiff argues the ALJ erred in finding that he did not meet or medically equal Listing 12.04.[3] Doc. 17 at 6–7, 22. As discussed, the third step of the ALJ's sequential analysis determines whether the Plaintiff's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

---

[3] Plaintiff states in conclusory fashion the ALJ erred in concluding that Plaintiff's impairments did not medically equal Listing 12.04, but it is unclear what, if anything, about the medical equivalence conclusion Plaintiff challenges. As a corollary, Plaintiff fails to explain what evidence would support a finding of medical equivalency, as opposed to a finding that Plaintiff actually met Listing 12.04. Rather, Plaintiff's brief appears entirely focused on arguing that Plaintiff met Listing 12.04. Accordingly, I deem any medically equivalency argument as unsupported and lacking merit.

Plaintiff contends his impairments satisfy the criteria of Listing 12.04, which assesses depressive, bipolar, and other related disorders. 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.04. Listing 12.04 is divided into three Paragraph A, Paragraph B, and Paragraph C. Id. In order for an impairment to meet or equal Listing 12.04, the criteria in Paragraph A and Paragraph B must be satisfied, or the criteria in Paragraph A and Paragraph C must be satisfied. Id. In this case, the ALJ considered whether Plaintiff's impairments met or equaled Listing 12.04 and determined that they did not. Doc. 13-2 at 14–16 (R. 13–15). Specifically, the ALJ determined that the criteria for Paragraph B and Paragraph C were not satisfied.[4] Id.

In evaluating Plaintiff's limitations under Paragraphs B and C, ALJ Carter considered Plaintiff's hearing testimony, where Plaintiff testified that he suffered from depression with paranoid feelings, hallucinations, loss of interest, suicidal thoughts, and constant thinking. Doc. 13-2 at 15 (R. 14). On the other hand, Plaintiff testified he ran his own music studio in the past and had made efforts to restart the business. Plaintiff also testified he a long-term girlfriend he sees every weekend, and that, until a few months before the hearing, Plaintiff's children would visit him overnight every other weekend.[5] Id. Plaintiff also testified his daily activities included watching television, using a computer, weightlifting, playing video games, cutting the grass, and taking walks. Id.

The ALJ also considered the opinions of Dr. Kristiansson Roth, the disability examiner, who noted that Plaintiff's daily activities also included performing self-care activities with

---

[4] The ALJ determined that the criteria for Paragraph B and Paragraph C were not met but did not address the requirements of Paragraph A. He did not need to, given his conclusions regarding Paragraph B and Paragraph C. Because I find the ALJ committed no error in her assessment of the Paragraph B and Paragraph C criteria, there is no need to address Paragraph A further here.

[5] Plaintiff testified that he recently stopped seeing his children due to a disagreement with the children's mother. Doc. 13-2 at 15 (R. 14).

reminders, managing medications, attending appointments, and performing various household tasks, including going shopping.  Id.   Dr. Roth noted Plaintiff had at least one friend with whom Plaintiff would, on occasion, spend the entire day.  Id.   Dr. Roth explained Plaintiff was well-groomed and cooperative at his exam.  Id.   Although Plaintiff was inattentive and looked tired and sad at the exam, Plaintiff had good eye contact, slow motor activity, informative communication, soft and slow speech patterns, and no overt hallucinations or psychotic symptoms.   Dr. Roth also noted Plaintiff could understand and recall simple directions, follow detailed verbal directions, comprehend and recall detailed information, state the days of the week backward, invert his zip code, perform serial 7s, and recall three of three items immediately and after fifteen minutes.  Id.   Ultimate, Dr. Roth diagnosed Plaintiff with major depressive disorder with psychotic features.   Doc. 13-2 at 20 (R. 19) (citing Doc. 13-8 at 92 (R. 415)).   Dr. Roth further opined Plaintiff had "moderate problems interacting appropriately with coworkers, supervisors and the general public, with no conflicts of aggressive behaviors." Id.   Dr. Roth also opined Plaintiff had only moderate problems with adapting to the stress of a typical, normal working environment.  Id.

ALJ Carter also considered the opinions of Dr. Michelle Wierson, a State Agency mental health consultant who relied record medical evidence.  Id. (citing Doc. 13-3 at 17 (R. 101)). Dr. Wierson opined Plaintiff had moderate limitations with maintaining social functioning, moderate limitations with concentration, persistence or pace, and one or two episodes of decompensation.  Id.   Additionally, Dr. Wierson concluded Plaintiff could perform simple, unskilled repetitive assignments and tasks with reduced contact with the public and no significant collaboration with coworkers.  Id.   The ALJ found these opinions to be consistent with the objective mental health evidence.  Id. at 21.

The ALJ also noted the objective mental health evidence demonstrated that Plaintiff sought mental health treatment in March 2015, during which he complained of anxiety and depression, difficulty sleeping, good appetite, suicidal thoughts without any plan, previously hearing voices, and seeing shadows. Id. at 18 (citing Doc. 13-8 at 30–47 (R. 353–70). At that exam, Plaintiff was well-groomed, made appropriate eye contact, and exhibited a calm behavior, a cooperative attitude, clear speech, an anxious and depressed mood, a full range of affect, logical thought process, normal thought content, no perceptual disturbances, intact memory, full orientation, and average estimated intelligence. Id. At that exam, Plaintiff was diagnosed with recurrent depression. Id. In the months following, Plaintiff had some improvement with medication, but later, he displayed persecutory delusions and reported having anger outbursts, a constantly running mind, negative thoughts, a desire to isolate, and an episode of marijuana use. Id.

In consideration of this evidence, the ALJ concluded Plaintiff's impairments did not satisfy the criteria of Paragraph B or Paragraph C of Listing 12.04. Plaintiff contends the ALJ's conclusion was erroneous.

### A.     ALJ Carter's Application of Paragraph B

Listing 12.04, Paragraph B can be satisfied by showing at least one extreme limitation or two marked limitations in the following areas of mental functioning: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. The ALJ determined Plaintiff had only mild or moderate limitations in the four functional areas and did not have any marked or extreme limitations. Doc. 13-2 at 16 (R. 15). Plaintiff argues ALJ Carter erred

in not finding he had marked limitations in interacting with others (Paragraph B(2)) and adapting or managing oneself (Paragraph B(4)).[6]   Doc. 17 at 7.

Regarding interacting with others (Paragraph B(2)), ALJ Carter found Plaintiff had only a moderate limitation.   Id.   Doc. 13-2 at 16 (R. 15).   Section 12.00(E)(2) of the Listings provides additional context on the "interacting with others" requirement:

> This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public.   Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.   These examples illustrate the nature of this area of mental functioning.   We do not require documentation of all of the examples.

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00(E)(2).   Substantial evidence supports ALJ Carter's finding Plaintiff had no more than a moderate limitation interacting with others.   The ALJ expressly considered Plaintiff's hearing testimony, Dr. Roth's opinions, Dr. Wierson's opinions, and all other objective mental health evidence.   In light of that evidence, ALJ Carter concluded there was no evidence Plaintiff lacks a knowledge of standards of neatness and decorum.   Doc. 13-2 at 16 (R. 15).   He also concluded there was no evidence Plaintiff showed significant signs of tangential or circumstantial thought, loose associations, homicidal ideation, excessive paranoia, or excessive hallucinations or delusions.   Id.   Further, the ALJ noted Plaintiff could communicate clearly, demonstrated cooperative behavior, and could initiate and sustain at least some social contact.   Id.   The ALJ also found Plaintiff had the ability to communicate about specific aspects of task-oriented employment and could abide by the standards governing basic conduct and appearance predominant in the workplace.   Id.   Substantial evidence supports the

---

[6]   Plaintiff does not challenge the ALJ's decisions regarding Paragraphs B(1) or (3).

10

ALJ's conclusions regarding Paragraph B(2), and, therefore, Plaintiff's challenge to this portion of the ALJ's decision fails.

In the area of adapting and managing oneself, ALJ Carter found Plaintiff had a mild limitation.  Id.  Section 12.00(E)(4) of the Listings provides additional context on the "adapting and managing oneself" requirement:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting.  Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.  These examples illustrate the nature of this area of mental functioning.  We do not require documentation of all of the examples.

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00(E)(4).  Substantial evidence supports ALJ Carter's finding Plaintiff had no more than a moderate limitation adapting and managing oneself.  Again, the ALJ expressly considered Plaintiff's hearing testimony, Dr. Roth's opinions, Dr. Wierson's opinions, and all other objective mental health evidence.  In light of that evidence, the ALJ found Plaintiff could care for his own personal hygiene and maintain appropriate attire.  Doc. 13-2 at 16 (R. 15).  The ALJ concluded Plaintiff had not engaged in self-injurious behavior and was aware of hazards.  Id.  The ALJ concluded Plaintiff was capable of controlling his moods and had not experienced any outbursts of inappropriate behavior that would interrupt a work setting.  Id.  Further, Plaintiff had not required any inpatient psychiatric treatment.  Id.  The ALJ also determined there was no compelling evidence to suggest Plaintiff's capacity to appreciate or adhere to occupational safety guidelines, secure transportation to a jobsite, or do basic planning for work activities was particularly limited by a mental impairment.  Id.  As ALJ Carter noted, Dr. Roth found Plaintiff capable of performing all self-care activities with

reminders, managing his medications, attending appointments, preparing light meals, cleaning the kitchen, doing laundry, dusting, sweeping, vacuuming, making his bed, and taking out the trash.  Id. at 15 (R. 14) (citing Doc. 13-8 at 90–92 (R. 413–15)).  Dr. Roth also observed Plaintiff was well-groomed and cooperative.  Id.  However, as ALJ Carter noted, Plaintiff would have moderate problems with adapting to the stress of a typical work environment, but this still would not suggest a marked or extreme limitation in this functional area.  Id. at 20 (R. 19) (citing Doc. 13-8 at 92 (R. 415)).  Importantly, the ALJ correctly observed that medical evidence demonstrated from May 2017 to July 2017, Plaintiff experienced significant improvement in his symptoms with proper medications.  Ultimately, there is substantial evidence to support ALJ Carter's finding that Plaintiff exhibited only a mild impairment in this area.  Accordingly, the ALJ's finding that Plaintiff did not meet the requirements of Paragraph B is supported by substantial evidence.  Because the ALJ found Plaintiff did not meet the requirements of Paragraph B, one of two possible combinations to meet Listing 12.04 (meeting the criteria of Paragraph A and Paragraph B) is foreclosed.

      **B.**     **ALJ Carter's Application of Paragraph C**

A claimant's impairments may also meet Listing 12.04 if the criteria in Paragraph A and Paragraph C are satisfied.  In order to satisfy Paragraph C, the listed mental disorder must be "serious and persistent," which means the claimant must have a medically documented history of the existence of the disorder over a period of at least two years and evidence of both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder; and (2) marginal adjustment (meaning the claimant has minimal capacity to adapt to changes in his environment or to demands that are not already part of his

daily life).   20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.04.   In other words, Paragraph C is satisfied when there is a documented two-year history of the disorder, evidence of "ongoing" treatment (or an equivalent), and evidence of "marginal adjustment."

Section 12.00(G)(2)(b) of the Listings provides additional context the Paragraph C(1) criteria:

> The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (see 12.00D).   We consider that you receive ongoing medical treatment when the medical evidence establishes that you obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition.   We will consider periods of inconsistent treatment or lack of compliance with treatment that may result from your mental disorder.   If the evidence indicates that the inconsistent treatment or lack of compliance is a feature of your mental disorder, and it has led to an exacerbation of your symptoms and signs, we will not use it as evidence to support a finding that you have not received ongoing medical treatment as required by this paragraph.

20 C.F.R. Pt. 404, Subpt. P. App. 1, §12.00(G)(2)(b).   Similarly, Section 12.00(G)(2)(c) of the Listings provides additional context the Paragraph C(2) criteria:

> The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.   We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D).   Such deterioration may have necessitated a significant change in medication or other treatment.   Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. Pt. 404, Subpt. P. App. 1, §12.00(G)(2)(c).

ALJ Carter expressly states in her decision she "considered whether the 'paragraph C'

13

criteria satisfied" and concluded in this case that evidence failed to establish the presence of those criteria.[7]  Doc. 13-2 at 16 (R. 15).  Plaintiff argues he meets the requirements of Paragraph C because he has had "serious and persistent mental illness with a medically documented history of the existence of a disorder over a period of the last two years," and "there is clear evidence [Plaintiff] has had medical treatment, mental health therapy, and psychosocial support that was ongoing and that diminished the symptoms and signs of his mental disorder."  Doc. 17 at 9.  Further, Plaintiff argues he "had marginal adjustment with minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life."  Id.  In support of this contention, Plaintiff details a number of medical and psychiatric exams, hospital visits, mental health episodes, counseling, and personal details.  Id. at 9–21.

Defendant, on the other hand, argues substantial evidence does not support a conclusion that Plaintiff's treatment was "ongoing" because Plaintiff was frequently noncompliant with medication and therapy recommendations.  Doc. 18 at 14.  Defendant also argues substantial evidence does not support that Plaintiff had "marginal adjustment" because Plaintiff's symptoms improved, he was able to overcome some symptoms without difficulty, he stayed busy and motivated, and he was willing to have family members turn to him for support.  Id.  Defendant also points to medical records that show an absence of memory or concentration problems.  Id.

Plaintiff fails to show the ALJ committed any error in her Paragraph C determination.

---

[7]  The ALJ's decision devotes only two sentences to the Paragraph C criteria.  Doc. 13-2 at 16 (R. 15).  The Eleventh Circuit has confirmed that an ALJ is not required to mechanically recite evidence leading to determination, and, when it comes to whether a claimant meets a Listing, the ALJ's finding on that issue can be implied and need not even be expressly stated in the decision.  Johnson v. Barnhart, 148 F. App'x 838, 842 (11th Cir. 2005); Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986).  Thus, the ALJ's succinct treatment of the Paragraph C criteria is permissible.  However, the Court also notes it is helpful for the ALJ to tie findings to particular listings that the claimant has argued in a more detailed way, and such practices are encouraged.  Bailey v. Soc. Sec. Admin., Comm'r, 782 F. App'x 838, 842 n.5 (11th Cir. 2019).

Specifically, Plaintiff fails to show the evidence in this case demonstrates that either the Paragraph C(1) or Paragraph C(2) criteria were satisfied. Plaintiff points to various interactions he had with mental healthcare providers between 2013 and 2017. The first date Plaintiff cites is an emergency room visit and brief hospitalization from June 12 to 14, 2013. Doc. 17 at 9–10. The next event Plaintiff identifies is a visit with a psychiatrist on March 11, 2015. Id. at 10. Plaintiff then notes several sporadic medical and psychiatric exams, hospital visits, mental health episodes, and counseling sessions, dating from March 11, 2015 through October 12, 2017. Id. at 10–21. Thus, the Court accepts that Plaintiff had medically documented history of the existence of his mental health disorder over a period of at least two years.

However, Listing 12.04, Paragraph C(1) requires the claimant receive treatment or counseling on an "ongoing basis" during the relevant period. 20 C.F.R. Pt. 404, Subpt. P. App. 1, §12.04(C)(1). It is clear from the record Plaintiff did not attend treatment on an "ongoing basis" during this time. The intervals between visits varied greatly, as did the source and type of care.[8] Some of the instances Plaintiff identifies are simply self-reports of symptoms during doctor visits for other complaints or diagnoses made at such appointments and do not reflect treatment, therapy, psychological supports, or highly structured settings. See, e.g., Doc. 13-4 at 61–64, 87, 88 (R. 945–48, 971, 972). Additionally, the medical records demonstrate Plaintiff was frequently noncompliant with his treatment. Doc. 13-9 at 24, 34; Doc. 13-10 at 6, 9, 13, 20; Doc. 13-11 at 80 (R. 440, 450, 534, 537, 541, 548, 680). At best, the evidence shows Plaintiff had frequent but irregular interactions with various medical and mental health care providers, involving a host of mood disorder issues and diagnoses, demonstrating occasional progress, and

---

[8] Doc. 13-8 at 30–46, 48–49, 51–59, 69–72, 78–79 (R. 353–69, 371–72, 374–82, 392–94, 401–02); Doc. 13-9 at 9–19 (R. 424–34); Doc. 13-10 at 5–6, 11–15, 21–28, 53–56, 59–60 (R. 533–34, 539–43, 549–56, 581–83, 587–88); Doc. 13-11 at 48–50, 60–68, 70–72, 82–89 (R. 648–650, 660–68, 670–72, 682–89); Doc. 13-12 at 31–36, 40–48 (R. 734–39, 743–51).

frequent noncompliance. The evidence does not, however, show Plaintiff engaged in the kind of continued and structured care Paragraph C(1) requires. See Houston v. Comm'r of Soc. Sec., No. 1:18-cv-449, 2019 WL 1529472, at *5 (W.D.N.Y. Apr. 8, 2019) (finding a claimant did not meet the requirements of Paragraph C due to, among other things, relatively infrequent therapy sessions); cf. Lowe v. Comm'r of Soc. Sec., No. 2:18-cv-428, 2020 WL 439413, at *4 (N.D. Ind. Jan. 9, 2020) (finding the consistent treatment shown by plaintiff—attending five to ten therapy and psychosocial support sessions per month—is the kind that could plausibly meet the Paragraph C of Listing 12.06, although the court abstained from making a determination as to this issue).

Plaintiff also fails to show the "marginal adjustment" criterion of Paragraph C(2) has been met. The record evidence demonstrates, and the ALJ observed, that Plaintiff's symptoms often improved significantly with medications. Additionally, the evidence demonstrated Plaintiff was able to interact with others, carry on a long-term romantic relationship (even though it was characterized by frequent break-ups), and engage in many ordinary daily activities without significant limitation. And, as noted above, the record evidence demonstrates that from May 2017 to July 2017, Plaintiff experienced significant improvement in his symptoms. Indeed, Plaintiff has failed to point to evidence that his "adaptation to the requirements of daily life is fragile" or that he has "have minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life." 20 C.F.R. Pt. 404, Subpt. P. App. 1, §12.00(G)(2)(c).

Having considered the record, there is substantial evidence supporting ALJ Carter's finding that Plaintiff did not meet the requirements of Listing 12.04. Accordingly, this enumeration of error is without merit.

**V.     Whether Substantial Evidence Supports ALJ Carter's Conclusion that Plaintiff Could work on a Regular and Sustained Basis**

Plaintiff argues ALJ Carter erred in finding he could work on a regular and sustained basis.  Doc. 17 at 7, 17.  Plaintiff states this is especially true "when the Administrative Law Judge failed to review the statement of [Plaintiff's] grandmother, Ms. Joann Douglas."  Id.  Defendant argues the objective medical evidence shows Plaintiff is capable of working on a regular and sustained basis.  Doc. 18 at 15.

Plaintiff's argument primarily relies on information he self-reported to Dr. Roth that was ultimately included in Dr. Roth's report.  Doc. 17 at 17–18.  However, this information does not represent Dr. Roth's objective medical opinions.  Compare Doc. 13-8 at 87–90 (R. 410–13), with 91–92 (R. 414–15).  In contrast, the ALJ based her decision on the objective medical opinions of Drs. Roth and Wierson.  Dr. Roth found Plaintiff had no limitations with remembering and understanding unskilled work procedures and only moderate problems with concentrating, keeping pace, and persistence.  Doc. 13-2 at 20 (R. 19)(citing Doc. 13-8 at 87–92 (R. 410–15)).  Dr. Roth also found Plaintiff had moderate problems interacting appropriately with coworkers, supervisors, and the general public but had no conflicts or aggressive behavior.  Id.  Dr. Roth also found Plaintiff had only moderate problems adapting to the stress of a normal work environment.  Id.  The ALJ found these opinions to be generally consistent with the objective mental health evidence as a whole and gave them great weight.  Id.  ALJ Carter also relied upon the opinions of Dr. Wierson, who found Plaintiff had only minor limitations with the activities of daily living; moderate limitations with concentration, persistence, or pace; and one or two episodes of decompensation.  Id. (citing Doc. 13-3 at 15–17 (R. 99–101)).  Dr. Wierson concluded Plaintiff could perform simple, unskilled repetitive assignments and tasks with rescued contact with the public and no significant collaboration with coworkers.  Id. at 19–20.

(R. 20–21).   The ALJ gave this opinion great weight, as it was consistent with the objective medical records.   Id. at 20. (R. 21).   The medical opinions of Drs. Roth and Wierson, upon which the ALJ's conclusion was based, constitute more than a "scintilla" of evidence and enough for a "reasonable person" to conclude Plaintiff was capable of working on a regular and sustained basis.   Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).   Accordingly, the ALJ's conclusion was properly based on substantial evidence.

Plaintiff argues the ALJ improperly rejected the statements of Ms. Joann Douglas, Plaintiff's grandmother.   Doc. 17 at 7, 17.   Plaintiff argues Ms. Douglas' statements bolster much of Plaintiff's own subjective complaints.   Id. at 18–21.   The ALJ considered Ms. Douglas' statements but gave them little weight because the statements constituted lay opinion based on casual observation rather than objective medical examination and testing.   Doc. 13-2 at 17–18 (R. 16–17).   Id.   Further, Ms. Douglas' statements could reasonably be tainted by family loyalty.   Id.   Finally, like Plaintiff's own statement, the ALJ gave Ms. Douglas' statements little weight because the statements were inconsistent with the medical evidence and the other evidence in the record.   Id.

Under the Regulations, the Social Security Agency may consider evidence from sources, other than acceptable medical sources, to show the severity of a plaintiff's impairments and how they affect his ability to work.   20 C.F.R. §§ 404.1502, 404.1513(a)(4), 416.902, 416.913(a)(4). The Regulations specifically include in the definition of non-medical sources information coming from "family members, caregivers, friends, neighbors, employers, and clergy."   20 C.F.R. § 404.1502(e)(4).   However, "an ALJ has no duty to give significant or controlling weight" to opinions from non-medical sources.   Miles v. Soc. Sec. Admin., Comm'r, 469 F.

App'x 743, 745 (11th Cir. 2012). In fact, "even a medical source's statement that a claimant is 'unable to work' or 'disabled' does not bind the ALJ, who alone makes the ultimate determination as to disability under the regulations." Id. (citing 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)).

Here, the ALJ was under no obligation to give considerable weight to the statements of Ms. Douglas. The ALJ considered Ms. Douglas' statements and gave articulated reasons for giving them little weight. Thus, this enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge.

A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 6th day of March, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA